CITY OF SPRINGFIELD, Missouri, a Municipal Corporation, ex rel. BOARD OF PUBLIC UTILITIES OF SPRINGFIELD, MISSOURI, Appellant,

v.

Alice M. BRECHBUHLER, Wilbert Forrester and Stella Forrester, Gary Snyder a/k/a Gary Allen Snyder, Randall Snyder, Diane Snyder, F. Elaine Bollinger and Jacob Bollinger, Robert A. Burk, Michael W. Burk, and Jo I. Burk, Respondents.

No. 76920.

Supreme Court of Missouri, En Banc.

March 21, 1995.

Rehearing Denied April 25, 1995.

Rex C. McCall, Turner White, III, Springfield, William H. Sanders, Sr., Kansas City, for appellant.

George M. Johnson, Springfield, for respondents.

Fred Boeckmann, Columbia, for amicus, City of Columbia.

THOMAS, Judge.

This is an appeal by the City of Springfield from the trial court's dismissal of Springfield's petition to condemn by eminent domain gas line easements outside of a county in which Springfield is located. We affirm.

I.

On January 28, 1993, Springfield's Board of Public Utilities condemned easements on the respondents' land in Lawrence County, Missouri, for the purpose of transporting natural gas to Springfield to produce electricity at the publicly owned power plant. On February 22, 1993, the city council passed an ordinance declaring the need to condemn these easements. In March, Springfield filed a petition with the Circuit Court of Lawrence County to condemn the easements. This petition was dismissed by the trial court on

the grounds that 1) section 82.210[1] prevents condemning easements outside of the county in which the city is located, and 2) section 91.210 does not incorporate the condemnation provisions of section 91.600, which allows for the condemnation of waterworks, as a method of acquiring gas plants. We affirm the trial court's dismissal.

Springfield is a constitutional charter city, commonly known as a home rule city. Unlike non-home rule cities, which only have the powers expressly granted to them by the legislature or the constitution, home rule cities have "all powers that the general assembly has authority to confer upon any city," provided not otherwise limited by the Missouri Constitution, by statute, or by the city's charter itself. *Mo. Const. art. VI, § 19(a).* Springfield's charter allows it all of the powers that the General Assembly could provide. For purposes of this case, we assume, without deciding, that the provisions authorize Springfield to condemn property anywhere in Missouri unless limited by statute.

## II.

■ Section 82.240, the primary statute regarding condemnation powers for home rule cities, provides as follows:

> It shall be lawful for [a constitutional charter city] to make a provision in its charter, or by amendment thereof, to acquire and hold by gift, devise, purchase or by the exercise of the power of eminent domain by condemnation proceedings, lands for public use, either within the corporate boundaries of such city or outside of such corporate boundaries, *and within the territorial limits of the county in which such city may be situated,* for public parks, cemeteries, penal institutions, hospitals, rights-of-way for sewers, or for any other public purpose, and to provide for managing, controlling and policing the same. [Emphasis added.]

Springfield argues that section 82.240 does not limit the power of condemnation to counties in which portions of the City of Springfield are located. Under Springfield's inter-

pretation, because there is no restriction on Springfield as a constitutional charter city, it has the power to condemn land outside the county in which it is located under article VI, section 19(a).

■ The power of eminent domain is one of the most intrusive powers of government because it involves the power to take property from citizens against their will, albeit for fair consideration. Therefore in determining the power to condemn in a governmental body, statutes must be strictly construed.

In *Missouri Cities Water Co. v. Hodge,* 878 S.W.2d 819 (Mo. banc 1994), this Court considered the issue of whether a privately owned waterworks system already dedicated to public use can be condemned by a municipality for the same use. In reaching the conclusion that the city did not have the authority, the Court stated that statutes delegating the power to condemn must be strictly construed:

> [T]he exercise of eminent domain is in derogation of the right of the citizen; that a statute delegating that power must be strictly construed, ....

*Id.* at 821 (*quoting Southwestern Bell Telephone Co. v. Newingham,* 386 S.W.2d 663, 665 (Mo.App.1965)). The principle of strict construction applied generally to condemnation in *Missouri Cities* is equally applicable in this case.

Springfield relies principally on *Cape Motor Lodge, Inc. v. City of Cape Girardeau,* 706 S.W.2d 208 (Mo. banc 1986). In that case, the City of Cape Girardeau, also a constitutional charter city, proposed to contract with Southeast Missouri State University (SEMO) to build a "multi-use center." The city's portion was to be financed by a tax on hotel and restaurant receipts. A group of local hotel and restaurant owners who opposed the tax sought an injunction on the grounds that the city had no authority to enter into an agreement with SEMO. Article VI, section 16, of the Missouri Constitution provides:

---

1. *All statutory citations are to RSMo 1994, unless otherwise stated, because the statutes were not* changed from 1993.

Cooperation by local governments with other governmental units. Any municipality or political subdivision of the state may contract and cooperate with other municipalities or political subdivisions thereof, or with other states or their municipalities or political subdivisions, or with the United States, for the planning, development, construction, acquisition or operation of any public improvement or facility, or for a common service, in the manner provided by law.

The enabling statute, section 70.220, provides:

Political subdivisions may cooperate with each other, with other states, the United States or private persons.—Any municipality or political subdivision of this state, as herein defined, may contract and cooperate with any other municipality or political subdivision, or with an elective or appointive official thereof, or with a duly authorized agency of the United States, or of this state, or with other states or their municipalities or political subdivisions, or with any private person, firm, association, or corporation, for the planning, development, construction, acquisition or operation of any public improvement or facility, or for a common service; ....

This Court held that section 70.220 was not limiting and therefore the city could contract with SEMO.

The controlling issue in *Cape Motor Lodge* was whether the above-quoted provisions from the Constitution and the statute are "both authorizing and limiting" or "authorizing only." More specifically, the issue was whether these provisions should be construed to authorize cooperation with the entities listed and to prohibit cooperation with any entity not listed, or whether they should be construed to only authorize those listed and to remain neutral with respect to those not listed. Although we did not label it as such, the respondents argued the rule of statutory construction known as *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another). *Black's Law Dictionary* 581 (6th ed. 1990). We decided against applying this rule of construction in the *Cape Motor Lodge* case, and the provi-

sions being construed there were determined to be "authorizing only." This Court stated:

Section 70.220 and section 16 of article VI do not "operate as both authorization and limitation." These provisions contain no indication that the express enumerations of the entities named are to be considered as the exclusion of others not named.

*Cape Motor Lodge*, 706 S.W.2d at 212.

The issue in the present case is whether section 82.240 limits the power of a home rule city to condemn land outside of the territorial limits of the county in which the city is located. Because it is unclear whether section 82.240 operates as a limitation on Springfield's power to condemn, it is necessary to resort again to methods of statutory construction to determine whether this provision is "both authorizing and limiting" or "authorizing only." We employ the statutory construction tool known as *expressio unius est exclusio alterius*.

The application of this rule of construction to section 82.240 is fundamentally different than applying it to the provisions being construed in *Cape Motor Lodge* because of the difference in the provisions. The provisions at issue in *Cape Motor Lodge* contain a list of several types of unrelated entities with which cities may contract for the construction and operation of a public improvement. The list of entities is open ended, and the precise potential scope of the statute is not spelled out and is not otherwise evident. It is clear that there is more than one additional type of entity that is not mentioned in the statute, but it is difficult to determine which have been omitted. There is also no way to know which entities the legislature considered and deliberately omitted and which were omitted because they were not considered.

Put another way, there are three categories within the potential scope of section 70.220: 1) those which local governments are authorized to cooperate with, which are listed in the statute; 2) those which local governments are prohibited from cooperating with, which are not listed in the statute; and 3) those which the legislature has not considered, which also are not listed in the statute. There is no basis in the statute to distinguish the latter two categories from each other;

thus the impact of being omitted from the statute is ambiguous. The same problem exists with respect to section 16 of article VI of the Constitution.

Section 82.240 contains a single, conditional basis for the authorization as opposed to the open-ended list contained in the provisions construed in *Cape Motor Lodge*. There are three reasons to infer that section 82.240 is both authorizing and limiting while the statute at issue in *Cape Motor Lodge* was not.

First, the inference arises because section 82.240 is a single-factor statute. The condition for limiting authority under the statute is the absence of the condition for authorizing authority. Thus, both conditions hinge on the location of the property sought to be condemned. If it is located within the county where the city is located, there is authority; and it follows that if it is located outside that county, the condemnation is prohibited. The fact that both conditions involve the same inquiry forecloses the possibility that the failure of the statute to expressly mention the prohibition is a product of legislative oversight. Thus, the ambiguity in the provisions at issue in *Cape Motor Lodge* is not present in construing section 82.240.

Second, section 82.240 divides everything within the potential scope of the statute into two categories: property located in the county where the city is located and property located outside the county where the city is located. Unlike the case where the statute contains an open-ended list, there is no ambiguity as to what is included and omitted from the statute.

Third, the inference that the expression of one thing is the exclusion of another is particularly strong because section 82.240 would be meaningless if it failed to prohibit condemnation outside the county where the city is located. To say that condemnation is authorized for property within the county where the city is located but that it is also authorized in other counties is a non sequitur. Thus, any reasonable application of section 82.240 requires that it be construed to be both authorizing and limiting.

■ For these reasons, construing section 82.240 is distinguishable from construing the provisions at issue in *Cape Motor Lodge* and, when considered in conjunction with our previous recognition that the power of condemnation is to be strictly construed, leads us to conclude that section 82.240 is both authorizing and limiting. We hold, therefore, that section 82.240 prohibits condemnation by home rule cities in counties other than where that city is located.

Springfield also relies on *City of Cape Girardeau v. Jett*, 851 S.W.2d 114 (Mo.App. 1993), which holds that a home rule city can condemn land within its county but outside the city limits. There is dicta in *Jett* stating that "§ 82.240 was not a limitation on municipalities but rather a grant of authority ... [and] does not prohibit the power of eminent domain by a charter city, it authorizes it." *Id.* at 116. As the present opinion has pointed out, because section 82.240 is a statute that both authorizes and limits power, this dicta is incorrect and should not be followed.

An additional argument is made that section 82.240 does not contain a limitation because it was enacted before article VI, section 19(a), of the Constitution. Springfield argues that prior to the enactment of section 19(a) home rule cities had only the powers authorized by statute and limitations were irrelevant. This argument suggests that the only purpose for statutes enacted prior to section 19(a) was to grant authority rather than to limit it. In other words, the argument is that because limitations were unnecessary, the legislature did not intend to enact a limitation. Therefore, all statutes in effect at the time of section 19(a)'s adoption would not be considered limitations on the powers of home rule cities.

This view, however, would have the effect of rendering meaningless all home rule statutes enacted prior to section 19(a). The words of section 19(a) do not preclude using statutes that were enacted before its adoption in 1971. Absent specific language to the contrary, statutes dealing with home rule should be given the same weight regardless of whether they were enacted before or after the adoption of section 19(a). This argument is rejected.

## III.

Springfield argues in the alternative that section 91.210, which incorporates the provisions of section 91.600, gives Springfield the right to condemn gas line easements through respondents' property by eminent domain outside of the counties where Springfield is located. Section 91.210 purports to incorporate the provisions of section 91.600 that concern the purchase of waterworks to apply these sections to the purchase of gas plants. Section 91.600 provides in pertinent part as follows:

> [Constitutional charter cities] shall have the right and power to construct, maintain and operate waterworks to supply the city and all persons and parties therein with water and may for such purpose, take, hold, use and dispose of real estate and personal property whether within or outside of the city, or whether within or outside of the state of Missouri, necessary to accomplish such object. It may acquire such property by purchase, donation or an exercise of the power of eminent domain....

Although section 91.600 applies directly to the power of eminent domain, section 91.210 only purports to incorporate the provisions of section 91.600, which relate to purchases, and only does so for the purpose of acquiring gas plants by purchase. Section 91.210 provides as follows:

> All the provisions of section ... 91.600 ... which concern the purchase of waterworks, shall apply, so far as the same are applicable, to the erection or purchase of ... gas plants.

In making an expressed reference to acquisitions by the power of eminent domain in section 91.600 while speaking in the same sentence of acquisition by purchase, the legislature has manifested a clear intention that the two should be distinguished. Section 91.210 speaks expressly of purchase only; at best any reference to authority to acquire a gas plant by eminent domain would be by weak implication. The most logical implication is possibly to the contrary because of the separate treatment of eminent domain and purchase under section 91.600. We certainly could not and would not find an implied authority to condemn gas plants in the face of our finding in Part II limiting power to condemn such property. We find nothing in sections 91.210 and 91.600 giving Springfield the power of eminent domain to acquire the gas line easements it seeks through the respondents' property. We affirm the trial court's dismissal of Springfield's petition to condemn.

All concur.